IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JANET KENA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civ. No. MJM-25-173 |
| v. | * | |
| | * | |
| HOWARD COUNTY PUBLIC SCHOOLS, | * | |
| et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Janet Kena, on behalf of her minor son, A.A., ("Plaintiff") filed an Amended Complaint against Howard County Public Schools, Howard County Public Schools Board, Albert Holley, Anthony Goode, Will Robinson, Kevin Blake (collectively, "Defendants"). Howard County Public Schools moved to dismiss, arguing that it is not a legal entity capable of being sued, *see* ECF 12, and Plaintiff filed an Opposition on June 6. *See* ECF 13. The individual defendants and Howard County Public Schools Board also filed a motion to dismiss. *See* ECF 21. Plaintiff opposed the motion, and the defendants filed a Reply on August 25. *See* ECF 22 and 23. No hearing is necessary to resolve the motions. Loc. R. 105.6 (D. Md. 2025). For reasons stated below, the motions shall be granted, and the Amended Complaint shall be dismissed without prejudice.

## I.   FACTUAL BACKGROUND[1]

Plaintiff Janet Kena ("Plaintiff") is the mother of A.A., who was a junior at Hammond High School during the 2023–24 school year. Am. Compl. ¶¶ 2, 3, 16. Hammond High School is a public high school in Howard County, Maryland. *Id.* ¶ 4.

---

[1] The following facts are drawn from Plaintiff's Amended Complaint. *See* ECF 10.

1

On January 18, 2024, A.A. was attending a varsity basketball team practice in the gym of Hammond when he suffered a cardiac arrest. *Id.* ¶ 17. Defendant Albert Holley was the head coach of the basketball team, and defendants Anthony Goode, Will Robinson, and Kevin Blake were assistant coaches. *Id.* ¶¶ 7–10. The Amended Complaint alleges that Holley, Goode, Robinson, and Blake were all present at the January 18, 2024, practice and "failed to immediately take action to provide medical assistance to A.A." *Id.* ¶ 18. A.A. laid unresponsive on the floor for approximately 15 minutes without medical intervention. *Id.* ¶¶ 19, 21. There was an automated external defibrillator ("AED") located directly outside the basketball gym. *Id.* ¶ 22. Defendants "were trained in administering emergency aid such as the AED in cases of medical emergency," but at no point was the AED used. *Id.* ¶¶ 22–23. A school administrator called 911, *id.* ¶ 20, and paramedics responded to the scene.

Over the next ten months, A.A. spent periods of time in various intensive care units at Johns Hopkins Hospital and Mt. Washington Hospital. *Id.* ¶¶ 32–32. The Amended Complaint alleges that, due to the cardiac arrest and Defendants' "failure to provide immediate medical aid, A.A. is now in a persistent vegetative state." *Id.* ¶ 35.[2] A.A. is a quadriplegic, unable to speak, and requires a feeding tube for sustenance and requires "around-the-clock care." *Id.* ¶¶ 36–38, 43. Ultimately, Plaintiff was terminated from her employment after exhausting her Family Medical Leave Act benefits and forced to move to an apartment accessible for A.A. *Id.* ¶ 44.

The Amended Complaint asserts claims against Defendants in three counts: (1) violation of due process under 42 U.S.C. § 1983, against all Defendants; (2) municipal liability, against Howard County Public Schools ("HCPS"); and (3) gross negligence, against all Defendants. ECF

---

[2] Plaintiff does not blame defendants for inducing the heart attack. *See* ECF 22 at 8 ("Through no fault of the Defendants, A.A. suffered a heart attack while at practice on January 18, 2024. It was in the subsequent minutes after A.A. collapsed from a heart attack where the liability lies.").

10. HCPS and the remaining defendants each filed a motion to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).

## II.    STANDARD OF REVIEW

Under Rule 12(b)(6), a party can seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the *reasonable* inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added).

When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" the defendant's liability for the alleged wrong and the plaintiff's entitlement to the remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011).

## III.    ANALYSIS

### A. Claims Against HCPS

In its motion to dismiss, HCPS argues that it is not a legal entity capable of being sued, and, therefore, Plaintiff's claims against it must be dismissed. ECF 12. "When a party named in a

suit is not an entity that can legally be sued, the Court may dismiss the claims against that entity with prejudice, as any future claims against that entity would be futile." *Jabari-Kitwala v. Montgomery Cnty. Pub. Schs.*, Civ. No. GLS-22-0060, 2024 WL 4007948, at *5 (D. Md. Aug. 30, 2024) (citing *Miller v. Montgomery Cnty. Pub. Schs.*, Civ. No. TJS-19-3067, 2020 WL 2097686, at *1 (D. Md. May 1, 2020)). Plaintiff does not dispute the contention that HCPS is not capable of being sued and that the Board of Education of Howard County ("BOE") is the proper party to this litigation. *See* ECF 13 at 5. Accordingly, HCPS's motion to dismiss shall be granted, and Petitioner's claims against HCPS shall be dismissed.

### B. Due Process Claims

The First Count of the Amended Complaint asserts a claim against all Defendants under 42 U.S.C. § 1983 for violation of A.A.'s substantive due process rights under the Fourteenth Amendment by failing to render medical aid in the moments after he collapsed.

Title 42, United States Code, Section 1983 imposes liability on any "person" who, under the color of state law, causes the "deprivation of any rights, privileges, or immunities secured by the Constitution." Thus, to sustain an action under § 1983, a plaintiff must demonstrate that: (1) he suffered a deprivation of federal rights; and (2) the act or omission causing the deprivation was committed by a person acting under color of law. *See West v. Atkins*, 487 U.S. 42, 45 n.3 (1988); *Davison v. Randall*, 912 F.3d 666, 679 (4th Cir. 2019).

The Due Process Clause of the Fourteenth Amendment protects individuals against deprivations of "life, liberty, or property, without the due process of the law." U.S. Const. amend. XIV, § 1. "The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). However, the Supreme Court has "spurned any approach to the Fourteenth Amendment that would make it 'a font of tort law to be

superimposed upon whatever systems may already be administered by the States.'" *Waybright v. Frederick Cnty.*, 528 F.3d 199, 204 (4th Cir. 2008) (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)). *See also County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998) ("[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm."); *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 202 (1989) ("[T]he Due Process Clause of the Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation."); *Daniels v. Williams*, 474 U.S. 327, 332 (1986) ("Our Constitution . . . does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society."). Thus, to bring a viable substantive due process challenge, a plaintiff must typically show that a "defendant's behavior was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (quoting *Dean ex rel. Harkness v. McKinney*, 976 F.3d 407, 413 (4th Cir. 2020)). "Th[is] requirement ensures that alleged violations of substantive due process do not improperly infringe on state tort law." *Callahan v. N. Carolina Dep't of Pub. Safety*, 18 F.4th 142, 149 n.5 (4th Cir. 2021).

Whether a government actor's conduct "shocks the conscience" turns on its degree of culpability. *Waybright*, 528 F.3d at 205. "Conduct intended to injure . . . in some way unjustifiable by any government interest" is most likely to rise to the conscience-shocking level and is on one end of the culpability spectrum. *Id.* (quoting *Lewis*, 523 U.S. at 849). At the other end of the "culpability spectrum" lies "negligently inflicted harm," which is "categorically beneath the threshold of constitutional due process." *Id.* (quoting *Lewis*, 523 U.S. at 848–49); *see also Daniels*, 474 U.S. at 328 ("We conclude that the Due Process Clause is simply not implicated by a *negligent*

act of an official causing unintended loss of or injury to life, liberty, or property.") (emphasis in original). There is also an "intermediate level of culpability"—deliberate indifference—which, if proven, "can . . . also establish a due process violation," *Dean*, 976 F.3d at 415 (citing *Lewis*, 523 U.S. at 848–49), though cases involving this intermediate level of culpability "may have constitutional implications . . . only in special circumstances," *Waybright*, 528 F.3d at 205 (citing *Lewis*, 523 U.S. at 849).[3]

Plaintiff's claim against the individual defendants is based on their failure to render medical aid in the moments after A.A. collapsed, specifically, to utilize the AED machine while waiting for paramedics to arrive. *See* ECF 22 at 8, 14–15. Plaintiff argues that the individual defendants "violated A.A.'s right to bodily integrity by failing to take adequate precautions which amounted to deliberate indifference to his constitutional rights as a student." *Id.* at 14. Exhibits attached to Plaintiff's response in opposition include a Maryland Public Secondary Schools Athletic Association ("MPSSAA") regulation that requires all MPSSAA member schools to employ coaches who "[p]ossess a MPSSAA/MSDE Coach Certification." ECF 22-1. The second exhibit is a "suggested outline" of courses on "care and prevention of athletic injuries" for coaches to attend, which was formulated by the MPSSAA Medical Advisory Board and approved on

---

[3] For example, in circumstances where the government is required "to take care of those who have already been deprived of their liberty," such as "pretrial detainees," "persons in mental institutions," "convicted felons," and "persons under arrest," *Collins v. City of Harker Heights*, 503 U.S. 127 (1992), the government's deliberate indifference to the care of such persons in its custody "can shock the conscience for purposes of finding a substantive due process violation," *Slaughter v. Mayor & City Council of Baltimore*, 682 F.3d 317, 321 (4th Cir. 2012). *See also Dean*, 976 F.3d at 415 (deliberate indifference standard sensibly applies only when actual deliberation is practical, such as when a law enforcement officer can make "unhurried judgments with time to deliberate, such as in the case of a non-emergency"). Courts evaluating due process claims grounded in this middle range of the culpability spectrum "should proceed with 'self-restraint' and 'utmost care' and make 'an exact analysis' of the circumstances presented 'before any abuse of power is condemned as conscience shocking.'" *Waybright*, 528 F.3d at 205 (quoting *Collins*, 503 U.S. at 125, and *Lewis*, 523 U.S. at 850).

December 11, 2024. ECF 22-2. The outline contains "CPR/AED Certification" and "Sudden Cardiac Arrest" components. *Id.*

Defendants raise several arguments in support of dismissal. First, Defendants argue that Plaintiffs' claims against Holley, Goode, Robinson and Blake fail because they are not considered "persons" under § 1983. ECF 21 at 4 (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) and *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989)). Second, Defendants argue that "the Due Process Clause works only as a negative prohibition on state action," *Pinder v. Johnson*, 54 F.3d 1169, 1174 (4th Cir. 1995), so Plaintiff's claim, which is premised on Defendants failure to provide aid, should be dismissed. ECF 21 at 6. Next, Defendants argue that Plaintiff failed to allege that they acted "affirmatively or with deliberateness to deprive A.A. of any rights protected under § 1983." *Id.* at 7–8 (citing *Waybright*, 528 F.3d at 206, and *Pope v. Trotwood-Madison City Sch. Dist. Bd. of Educ.*, 162 F. Supp. 2d 803 (S.D. Ohio 2000)). Finally, in a footnote, Defendants suggest they are entitled to qualified immunity. ECF 21 at 8 n.3.

This case is undeniably heartbreaking. However, Defendants are correct that Plaintiff's Amended Complaint does not state a plausible substantive due process claim.[4]

To begin, Plaintiff does not allege any facts to suggest Defendants "intended to injure" A.A. *Waybright*, 528 F.3d at 205. The allegation here is that A.A. "was unresponsive on the floor for approximately 15 minutes without emergency medical intervention." Am. Compl. ¶ 14. Plaintiff does not suggest, nor can any reasonable inference be made, that by failing to use the

---

[4] The individual defendants are incorrect in their argument that they are not "persons" subject to suit under § 1983. Plaintiff sued these defendants in both their "*individual* and official capacities." Am. Compl. ¶¶ 7–10 (emphasis added). "While state officials sued in their official capacities are not 'persons' under § 1983…, state officials sued in their individual capacities are 'persons' within the meaning of the statute and are not absolutely immune from suit[.]" *Doe by Watson v. Russell Cnty. Sch. Bd.*, 292 F. Supp. 3d 690, 712 (W.D. Va. 2018) (internal citation omitted).

AED, Defendants intended for A.A. to suffer the tragic consequences of his medical condition. And to the extent any Defendant acted negligently, that claim is "not a constitutional one[.]"[5] *Waybright*, 528 F.3d at 206. Plaintiff therefore must establish this case is one of the "special circumstances" in which deliberate indifference can "shock the conscience to such an extent that a federal action lies." *Id.*

Plaintiff argues that this case should be analyzed under a deliberate indifference standard because "a special relationship exists between a school district and its students[.]" ECF 22 at 16 (quoting *Doe v. Bd. of Educ. of Prince George's Cnty.*, 888 F. Supp. 2d 659, 669 (D. Md. 2012) (analyzing whether plaintiffs sufficiently pled a duty to support their common-law negligence claim)). The "special relationship doctrine" is an exception to the general rule that the Due Process Clause does not require the State to provide its citizens with particular protective services. *Callahan*, 18 F.4th at 147 n.4. Where a special relationship exists, the state may acquire an affirmative duty to act on an individual's behalf, "and its failures to act are measured on a deliberate indifference standard." *Waybright*, 528 F.3d at 207.

In *Waybright*, the Fourth Circuit affirmed summary judgment in favor of the municipal defendants on the plaintiffs' due process claim based upon a fire department recruit's accidental death following an intensive physical training session. 528 F.3d at 208. As relevant here, the Fourth Circuit rejected the plaintiffs' contention that Waybright was in a "special relationship" with his supervisor such that the government had "a duty to act on [Waybright's] behalf and its failures to act [were] measured on a deliberate indifference standard[.]" *Id.* at 207. The court recognized that "a 'special relationship' is all but synonymous with a custodial relationship." *Id.* (citing *DeShaney*, 489 U.S. at 199–200). "The idea of a custodial relationship is a circumscribed one, grounded in

---

[5] Plaintiff does not assert a common law claim for simple negligence in her Complaint.

the rationale *DeShaney* gives for it: '[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs... it transgresses the substantive limits on state action . . . .'" *Id.* (quoting *DeShaney*, 489 U.S. at 200). Therefore, for a relationship to be considered custodial for due process purposes, there must be some sort of confinement, such as incarceration or institutionalization. *Id.* (citing *Pinder*, 54 F.3d at 1175). The special relationship doctrine did not apply in Waybright because the decedent was free to walk away from the training session and the job. *Id.*

Courts in the Fourth Circuit have specifically held that a special relationship is not automatically triggered by a school-student relationship. *See Stevenson ex rel. Stevenson v. Martin Cnty. Bd. of Educ.*, 3 F. App'x 25, 30 (4th Cir. 2001) (collecting cases from other circuits); *Jackson v. Sch. Bd. for City of Richmond, Virginia*, No. 3:24CV528 (RCY), 2025 WL 2025363, at *6 (E.D. Va. July 18, 2025) (concluding that attendance in public school does not create the type of custodial relationship required under Fourth Circuit precedent). Unlike the instant case, the *Stevenson* and *Jackson* cases each asserted due process violations based on public school officials' failure to protect students from harm directly inflicted by the actions of a third party. But, as noted *supra*, under *DeShaney*, *Pinder*, and *Waybright*, "a 'special relationship' is all but synonymous with a custodial relationship." *Waybright*, 528 F.3d at 207 (citing *DeShaney*, 489 U.S. at 199–200, and *Pinder*, 54 F.3d at 1175); *see also Callahan*, 18 F.4th at 147 n.4 ("The 'special relationship' exception arises *only* in a custodial context[.]").

Here, Plaintiff does not allege that A.A. was in "a custodial relationship" with Defendants or, otherwise, that Defendants "restrain[ed] [A.A.'s] liberty" such that they "render[ed] him unable to care for himself[]" before he experienced the medical emergency. *Waybright*, 528 F.3d at 207.

A.A.'s inability to care for himself once he went into cardiac arrest and collapsed in the gym did not, as a matter of law, suddenly create a "special relationship" with Defendants such that their unintentional failure to render medical care amounted to a substantive due process violation. Under the facts alleged in the Amended Complaint, Defendants' conduct was not "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Dean*, 976 F.3d at 413 (citation omitted). Therefore, the first count of the Amended Complaint must be dismissed.

### C. Municipal Liability Claim Against BOE

The second count of the Amended Complaint asserts a claim for municipal liability against HCPS, which the Court will construe as a claim against BOE.[6] In support of her claim for *Monell* liability against BOE, Plaintiff argues that the BOE failed to provide adequate training to its athletic coaching staff on the emergency medical needs of students, including the use of the mounted AED machines within Hammond High School, which amounts to deliberate indifference. *See* ECF 22 at 25.

Section 1983 does not make local governmental bodies "liable under *respondeat superior* principles for all constitutional violations of their employees simply because of the employment relationship." *Est. of Green v. City of Annapolis*, 696 F. Supp. 3d 130, 164 (D. Md. 2023) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987)). A municipality may be liable for a deprivation of federal rights under § 1983 "[o]nly in cases where [it] causes the deprivation 'through an official policy or custom' . . . ." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citation omitted); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) ("[In § 1983], Congress did not intend municipalities to be held liable unless action pursuant

---

[6] As explained in Part III.A, *supra*, HCPS is not an entity capable of being sued. Here, in addition to HCPS, Plaintiff names "Howard County Public Schools Board" as a defendant, which the Court construes as a reference to BOE.

to official municipal policy of some nature caused a constitutional tort."). "[A] viable § 1983 *Monell* claim consists of two components: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights." *Green v. Obsu*, Civ. No. ELH-19-2068, 2020 WL 758141, at *10 (D. Md. Feb. 13, 2020) (citations omitted).

Importantly, however, "[c]ourts in this District have repeatedly and consistently explained that Maryland county boards of education do not qualify as 'persons' within the meaning of the statute and therefore cannot be sued under § 1983." *Brown v. Prince George's Cnty. Bd. of Educ.*, Civ. No. GJH-18-2723, 2019 WL 3944983, at *3 (D. Md. Aug. 20, 2019) (collecting cases). Plaintiff's reliance on *Paxman v. Campbell*, 612 F.2d 848 (4th Cir. 1980) for the proposition that the Fourth Circuit has determined that school boards are "persons" under § 1983 is misplaced. As Defendants correctly point out, *Paxman* concerned school boards in Virginia, *see* 612 F.2d at 853—not Maryland—and the court "operated under the assumption that *Virginia* school boards were local governing bodies rather than state entities[,]" *Wood v. Bd. of Educ. of Charles Cnty.*, Civ. No. GJH-16-00239, 2016 WL 8669913, at *5 n.5 (D. Md. Sept. 30, 2016) (noting the distinction is "significant" because "the treatment of county boards of education is a state-specific issue"). In contrast, "Maryland law, through statute and judicial opinion, treats the county school boards as agents of the state." *Lewis v. Bd. of Educ. of Talbot Cnty.*, 262 F. Supp. 2d 608, 614 (D. Md. 2003). "[A]s state agencies, school boards are not considered 'persons' under § 1983[,]" *Schiffbauer v. Schmidt*, 95 F. Supp. 3d 846, 852 (D. Md. 2015) (citing *Mayo v. Bd. of Educ. of Prince George's Cnty.*, 797 F. Supp. 2d 685, 689 (D. Md. 2011)), and "are entitled to sovereign immunity[,]" *Lewis*, 262 F. Supp. 2d at 614. *See also Will*, 491 U.S. at 71 (holding that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983"). Therefore,

11

BOE cannot be sued under § 1983 on a *Monell* theory of liability, and the second count of the Amended Complaint fails to state a viable § 1983 claim and must be dismissed. *See, e.g., J.G. by & through Gusman v. Prince George's Cnty. Bd. of Educ.*, No. PWG-16-1008, 2017 WL 930130, at \*4 (D. Md. Mar. 8, 2017) (dismissing *Monell* claim against Prince George's County Board of Education because "Maryland's county school boards are not local government units[,]" but rather "instrumentalities of the State").

Even if the BOE was a "person" that could be liable under § 1983, Plaintiff's claim would still fail. "[T]here can be no municipal liability in the absence of an underlying constitutional violation." *Chae Bros., LLC v. Mayor & City Council of Baltimore*, Civ. No. GLR-17-1657, 2018 WL 1583468, at \*6 (D. Md. Mar. 30, 2018) (quoting *Jones v. Mullins Police Dep't*, 355 F. App'x 742, 747 (4th Cir. 2009)). Where a plaintiff, as here, fails to adequately allege an individual violated their constitutional rights, "there is no basis for *Monell* liability." *Wilson v. Town of Mount Jackson*, Civ. No. 5:21-CV-00055, 2022 WL 819531, at \*15 (W.D. Va. Mar. 17, 2022).

For each of the foregoing reasons, Plaintiff's *Monell* claim in the second count of her Amended Complaint must be dismissed.

### D. Gross Negligence Claims

The third count of the Amended Complaint asserts a claim of gross negligence against all Defendants under state law. A district court may exercise supplemental jurisdiction of claims for which it lacks original jurisdiction if those claims "are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). But § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim" when it has "dismissed all claims over which it has original jurisdiction." Because the Court has dismissed all federal claims asserted in the Amended Complaint over which it has

12

original jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state law claims and shall dismiss the third count of the Amended Complaint without prejudice. *See Owen-Williams v. Higgs*, Civ. No. DKC 18-0439, 2019 WL 448810, at \*6 (D. Md. Feb. 5, 2019) (declining supplemental jurisdiction over state law claims after dismissing § 1983 claims); *Mills v. Hassan*, Civ. No. GLR-18-562, 2019 WL 4750338, at \*9 (D. Md. Sept. 30, 2019) (same).

## IV.   ORDER

For the foregoing reasons, it is by the United States District Court for the District of Maryland hereby ORDERED that Defendants' Motions to Dismiss (ECF 12 & 21) are GRANTED, and the Amended Complaint is DISMISSED without prejudice. The Motion to Dismiss the initial Complaint (ECF 4) is DENIED as moot. Plaintiff SHALL FILE any motion for leave to file an amended pleading no later than **April 20, 2026.**

  3/30/26
Date

        /S/
Matthew J. Maddox
United States District Judge

13